Filed 10/21/20

<u>**CERTIFIED FOR PUBLICATION**</u>

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re RICHARD ALLEN NELSON | F079378 |
| On Habeas Corpus. | (Kern Super. Ct. No. LF005528A) |

ORIGINAL PROCEEDINGS; application for writ of habeas corpus. Gary T. Friedman, Judge.

Richard Allen Nelson, in pro. per., for Petitioner.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Jennifer Oleksa, and Cavan Cox, Deputy Attorneys General, for Respondent.

-ooOoo-

In this opinion, we hold that *People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*), which limited a sentencing court's factfinding abilities with respect to prior conviction enhancement allegations, does not apply retroactively on collateral review of final convictions. We further conclude the sentencing court in the present case did not violate *Gallardo*'s proscriptions in any event. Accordingly, we deny the petition for writ of habeas corpus.

## PROCEDURAL HISTORY

A jury convicted Richard Allen Nelson (petitioner) of assault with a deadly weapon upon a peace officer (Pen. Code,[1] § 245, subd. (c); count 1), eluding a pursuing peace officer with willful or wanton disregard for safety (Veh. Code, § 2800.2; count 2), and resisting or deterring an executive officer (§ 69; count 3). Following a bifurcated court trial, he was found to have suffered five prior "strike" convictions (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)), and he was sentenced to 75 years to life in prison. (*People v. Nelson* (Oct. 7, 2004, F043776) [nonpub. opn.] [2004 Cal.App. Unpub. Lexis 9147, *1-*2].)[2] On appeal, we modified the judgment so that execution of sentence on count 2 was stayed (§ 654), but otherwise affirmed. (*People v. Nelson*, *supra*, F043776 [2004 Cal.App. Unpub. Lexis, *supra*, at pp. *35-*36].) The California Supreme Court denied review.

On September 27, 2018, petitioner filed a petition for writ of habeas corpus in Kern County Superior Court, challenging his sentence. On December 27, 2018, the petition was denied.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] By separate order, we have taken judicial notice of the record on appeal and our opinion in case No. F043776. We cite the unpublished opinion in that case only to explain the factual background of the present proceeding and not as legal authority. (Cal. Rules of Court, rule 8.1115(a), (b); see *The Utility Reform Network v. Public Utilities Com.* (2014) 223 Cal.App.4th 945, 951, fn. 3; *Pacific Gas & Electric Co. v. City and County of San Francisco* (2012) 206 Cal.App.4th 897, 907, fn. 10.)

On June 4, 2019, petitioner filed the instant petition for writ of habeas corpus with this court. In it, he alleged (1) because his five prior felony convictions arose from a single course of conduct, they constituted only one strike; (2) in determining whether the prior convictions constituted strikes, the trial court relied on documents and evidence that were not part of the record of conviction; (3) in determining whether the strike allegations were proven, the trial court relied on uncertified documents; and (4) the trial court imposed an unlawful sentence on count 3. On September 26, 2019, this court summarily denied the petition.

Petitioner sought review in the California Supreme Court. On January 2, 2020, review was granted. The Supreme Court transferred the matter back to this court, with directions to vacate our summary denial and to order the Secretary of the Department of Corrections and Rehabilitation to show cause why petitioner is not entitled to relief pursuant to *Gallardo*, and why *Gallardo* should not apply retroactively on habeas corpus to final judgments of conviction. On January 7, 2020, we vacated our prior summary denial and issued the order to show cause. We also directed the Secretary to address the issue of whether reliance upon admissions in the plea form violates the proscriptions of *Gallardo*. The Secretary (respondent) filed a return to the order to show cause on January 30, 2020. Petitioner filed traverses on March 20 and 25, 2020.

## DISCUSSION

### I

### *GALLARDO* DOES NOT APPLY RETROACTIVELY TO CONVICTIONS THAT ARE FINAL.

### A.    *Gallardo* and Its Predecessors

" 'In order for a prior conviction from another jurisdiction to qualify as a strike under the Three Strikes law, it must involve the same conduct as would qualify as a strike in California.' " (*People v. Woodell* (1998) 17 Cal.4th 448, 453.) For years, California law permitted sentencing courts to examine "the entire record" of a conviction "to determine the substance of" that conviction for sentence enhancement purposes (*People*

3.

*v. Guerrero* (1988) 44 Cal.3d 343, 355), regardless of whether the conviction was incurred in California or another jurisdiction (*People v. Myers* (1993) 5 Cal.4th 1193, 1195, 1201).

After petitioner was convicted in Oregon, but before his conviction and sentencing, the United States Supreme Court held that under the Sixth and Fourteenth Amendments to the United States Constitution, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.) The exception for the fact of a prior conviction was based on *Almendarez-Torres v. United States* (1998) 523 U.S. 224. (*Apprendi*, *supra*, at pp. 487, 489-490.)

In *People v. McGee* (2006) 38 Cal.4th 682 (*McGee*), the California Supreme Court interpreted the *Apprendi* court as "addressing itself to issues that pertained to the charged offense, not to issues involving the defendant's previously adjudicated criminal conduct." (*McGee*, *supra*, at p. 697, italics omitted.) The state high court explained, however, that a sentencing court's inquiry concerning the nature of a prior conviction "is a limited one and must be based upon the record of the prior criminal proceeding, with a focus on the elements of the offense of which the defendant was convicted. If the enumeration of the elements of the offense does not resolve the issue, an examination of the record of the earlier criminal proceeding is required in order to ascertain whether that record reveals whether the conviction realistically may have been based on conduct that would not constitute a serious felony under California law. [Citation.] The need for such an inquiry does not contemplate that the court will make an independent determination regarding a disputed issue of fact relating to the defendant's prior conduct [citation], but instead that the court simply will examine the record of the prior proceeding to determine whether that record is sufficient to demonstrate that the conviction is of the type that subjects the defendant to increased punishment under California law." (*Id*. at p. 706, italics omitted.)

4.

Applying these principles, the *McGee* court found no error in the sentencing court's examination of the victim's preliminary hearing testimony, in the prior case, to determine the nature of the prior conviction. (*McGee*, *supra*, 38 Cal.4th at pp. 689, 709.) The California Supreme Court acknowledged, however, the possibility the United States Supreme Court might someday extend *Apprendi*. (*McGee*, *supra*, at p. 709.)

The extension arrived in *Descamps v. United States* (2013) 570 U.S. 254 (*Descamps*) and, more recently, *Mathis v. United States* (2016) 579 U.S. ___ [136 S.Ct. 2243] (*Mathis*). Although both cases construed a federal sentence enhancement statute, the Armed Career Criminal Act (ACCA), and so relied on the high court's ACCA jurisprudence, each also took into account Sixth Amendment principles.

In *Descamps*, the issue was whether the defendant's California burglary conviction constituted a burglary conviction for ACCA purposes. In making this determination, the district court relied on the defendant's plea colloquy in the burglary case, in which the defendant did not object to the prosecutor's statement of the defendant's conduct. The Supreme Court concluded this was error. (*Descamps*, *supra*, 570 U.S. at pp. 258-260.) With respect to a sentencing court's attempt to discern what a trial or plea proceeding revealed about a defendant's underlying conduct, the high court stated: "The Sixth Amendment contemplates that a jury — not a sentencing court — will find such facts, unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense — as distinct from amplifying but legally extraneous circumstances. [Citation.] Similarly, . . . when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment. [Citation.] So when the District Court here enhanced Descamps'[s] sentence, based on his supposed acquiescence to a prosecutorial statement (that he 'broke and entered') irrelevant to the crime charged, the court did just what we have said it cannot: rely on its own finding

5.

about a non-elemental fact to increase a defendant's maximum sentence." (*Id*. at pp. 269-270.)

In *Mathis*, the high court further explained: "[A]n elements-focus avoids unfairness to defendants. Statements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary. [Citation.] At trial, and still more at plea hearings, a defendant may have no incentive to contest what does not matter under the law; to the contrary, he 'may have good reason not to' — or even be precluded from doing so by the court. [Citation.] When that is true, a prosecutor's or judge's mistakes as to means, reflected in the record, is likely to go uncorrected. [Citation.] Such inaccuracies should not come back to haunt the defendant many years down the road by triggering a lengthy mandatory sentence." (*Mathis*, *supra*, 579 U.S. at p. ___ [136 S.Ct. at p. 2253], fn. omitted.)

In *Gallardo*, the California Supreme Court acknowledged the tension between the *McGee* and *Descamps* approaches, and agreed it was time to reconsider *McGee*. (*Gallardo*, *supra*, 4 Cal.5th at p. 124.)[3] Based on its review of *Descamps* and *Mathis*, the state Supreme Court concluded: "We are persuaded that the approach sanctioned in *McGee* is no longer tenable insofar as it authorizes trial courts to make findings about the conduct that 'realistically' gave rise to a defendant's prior conviction. The trial court's role is limited to determining the facts that were necessarily found in the course of entering the conviction. To do more is to engage in 'judicial factfinding that goes far beyond the recognition of a prior conviction.' [Citation.]" (*Gallardo*, *supra*, at p. 134.) The court further explained: "The judicial factfinding permitted under the *Almendarez-Torres* exception does not extend 'beyond the recognition of a prior conviction.'

---

[3] Prior to *Gallardo*, at least one appellate court found itself in the position of concluding a strike determination did not run afoul of *McGee*, but nevertheless contravened the Sixth Amendment, and so had to be reversed, pursuant to *Descamps*. (*People v. Saez* (2015) 237 Cal.App.4th 1177, 1205-1208.)

[Citation.] Consistent with this principle, and with the benefit of further explication by the high court, we now hold that a court considering whether to impose an increased sentence based on a prior qualifying conviction may not determine the 'nature or basis' of the prior conviction based on its independent conclusions about what facts or conduct 'realistically' supported the conviction. [Citation.] That inquiry invades the jury's province by permitting the court to make disputed findings about 'what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct.' [Citation.] The court's role is, rather, limited to identifying those facts that were established by virtue of the conviction itself — that is, facts the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea." (*Id*. at p. 136, fn. omitted.)

## B.     Retroactivity

The Courts of Appeal that have considered *Gallardo*'s retroactivity thus far are divided on the issue, and the question is pending before the California Supreme Court. (Compare, e.g., *In re Haden* (2020) 49 Cal.App.5th 1091, 1097-1100, review granted Aug. 12, 2020, S263261 [*Gallardo* does not apply retroactively to final convictions]; *In re Scott* (2020) 49 Cal.App.5th 1003, 1008-1009, 1015-1019, review granted Aug. 12, 2020, S262716 (*Scott*) [same]; *In re Milton* (2019) 42 Cal.App.5th 977, 982, 988-999, review granted Mar. 11, 2020, S259954 [same] with *In re Brown* (2020) 45 Cal.App.5th 699, 714-722, review granted June 10, 2020, S261454 [*Gallardo* applies retroactively].) We find *Scott* well reasoned and persuasive, and agree with its conclusion *Gallardo* does not apply retroactively.

As *Scott* explained, generally speaking, only a new substantive rule can be applied retroactively, while a new procedural rule does not apply retroactively unless it qualifies under the state or federal retroactivity standard. (*Scott*, *supra*, 49 Cal.App.5th at p. 1016, rev.gr.) *Gallardo* announced a rule that is both procedural, since it regulates only the manner of determining a defendant's culpability by imposing an evidentiary limitation on

7.

the materials a sentencing court may consider in determining whether a prior conviction qualifies as a strike; and new, since it disapproved of *McGee* and was not compelled by *Apprendi*, as shown by the fact *McGee* distinguished *Apprendi*. (*Scott*, *supra*, at p. 1016, rev.gr.) Accordingly, it must meet either the federal or the state retroactivity standard if it is to be applied retroactively on collateral attack of final convictions. (*Ibid.*)[4]

The federal retroactivity standard is set out in *Teague v. Lane* (1989) 489 U.S. 288. "Under *Teague*, as a general matter, 'new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.' [Citation.] *Teague* and its progeny recognize two categories of decisions that fall outside this general bar on retroactivity for procedural rules. First, '[n]ew *substantive* rules generally apply retroactively.' [Citations.] Second, new ' "watershed rules of criminal procedure," ' . . . will also have retroactive effect. [Citations.]" (*Welch v. United States* (2016) 578 U.S. ___, ___ [136 S.Ct. 1257, 1264].)

"In order to qualify as watershed, a new rule must meet two requirements. First, the rule must be necessary to prevent 'an " 'impermissibly large risk' " ' of an inaccurate conviction. [Citations.] Second, the rule must 'alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.' [Citation.]" (*Whorton v. Bockting* (2007) 549 U.S. 406, 418.) "[I]n order for a new rule to meet the accuracy requirement . . . , '[i]t is . . . not enough . . . to say that [the] rule is aimed at improving the accuracy of trial,' [citation], or that the rule 'is directed toward the enhancement of reliability and accuracy in some sense,' [citation]. Instead, the question is whether the new rule remedied 'an " 'impermissibly large risk' " ' of an inaccurate conviction. [Citation.]" (*Ibid.*)

---

**4**     The parties do not dispute that petitioner's convictions and sentence in case No. F043776 have long been final. (See *People v. Hargis* (2019) 33 Cal.App.5th 199, 205, fn. 3 & authorities cited.)

This is such a high bar that *Gideon v. Wainwright* (1963) 372 U.S. 335, in which the United States Supreme Court held counsel must be appointed for any indigent defendant charged with a felony, is the only case that court has identified as qualifying under this exception. (*Whorton v. Bockting*, *supra*, 549 U.S. at p. 419.) The Supreme Court has held that *Crawford v. Washington* (2004) 541 U.S. 36 does not satisfy the requirements (*Whorton v. Bockting*, *supra*, at pp. 418, 421), and *Apprendi* also has been held not to be a bedrock procedural rule (*U.S. v. Sanchez-Cervantes* (9th Cir. 2002) 282 F.3d 664, 669-670).

We concur with *Scott* that *Gallardo*, while significant, does not meet the federal standard. (*Scott*, *supra*, 49 Cal.App.5th at p. 1017, rev.gr.) *Gallardo* based its new procedural rule on general Sixth Amendment principles, not on concerns about the accuracy or reliability of a sentencing court's factfinding. (*Scott*, *supra*, at p. 1017, rev.gr.)

Our conclusion is bolstered by the United States Supreme Court's treatment of *Ring v. Arizona* (2002) 536 U.S. 584. *Ring* held that "a sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty." (*Ring*, *supra*, at p. 609.) Rather, "the Sixth Amendment requires that [those circumstances] be found by a jury." (*Ibid*.) In *Schriro v. Summerlin* (2004) 542 U.S. 348, the high court concluded that *Ring*'s holding was procedural, and that it did not apply retroactively to cases already final on direct review. (*Schriro v. Summerlin*, *supra*, at pp. 353, 358.)

As the California Supreme Court has recognized, "states are free to give greater retroactive impact to a decision than the federal courts choose to give . . . ." (*In re Johnson* (1970) 3 Cal.3d 404, 415.) Under *Johnson*, "[t]he retrospective effect of a law-making opinion is to be determined by ' "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of

9.

the new standards." ' [Citation.]" (*Id*. at p. 410.) "Fully retroactive decisions are seen as vindicating a right which is essential to a reliable determination of whether an accused should suffer a penal sanction. . . . [¶] On the other hand, decisions which have been denied retroactive effect are seen as vindicating interests which are collateral to or relatively far removed from the reliability of the fact-finding process at trial." (*Id*. at pp. 411-412.)

As *Scott* explained, *Gallardo* " 'did not impugn the accuracy of factfinding by trial courts,' " and the factfinding process may not be any less reliable when conducted by a sentencing judge rather than a jury. (*Scott*, *supra*, 49 Cal.App.5th at p. 1018, rev.gr.) Moreover, "the second and third factors weigh strongly against applying *Gallardo* retroactively," as retroactive application would be disruptive and burdensome. (*Id*. at p. 1018.) Like *Scott*, "we do not view the rule in *Gallardo* as vindicating a right so essential to reliable factfinding that it outweighs the countervailing considerations of reliance and disruption to the judicial process." (*Id*. at p. 1019.) Accordingly, *Gallardo* does not apply retroactively under the state standard.

## II

### PETITIONER IS NOT ENTITLED TO RELIEF EVEN IF *GALLARDO* IS RETROACTIVE.

Under California's three strikes law, "[a] prior conviction in another jurisdiction for an offense that, if committed in California, is punishable by imprisonment in the state prison constitutes a prior conviction of a particular serious or violent felony [i.e., a strike] if the prior conviction in the other jurisdiction is for an offense that includes all of the elements of a particular violent felony as defined in subdivision (c) of Section 667.5 or serious felony as defined in subdivision (c) of Section 1192.7." (§ 667, subd. (d)(2); accord, § 1170.12, subd. (b)(2).)[5]

---

[5] These statutes have been amended since petitioner's prior convictions were found to be strikes. As the amendments do not affect that finding or our analysis, we quote the version currently in effect.

Petitioner's prior Oregon convictions consisted of robbery in the first degree, burglary in the first degree with a firearm, two counts of attempted assault in the first degree with a firearm, and assault in the second degree with a firearm. During the court trial on the prior conviction allegations in petitioner's Kern County case, the parties recognized the elements of the Oregon offenses differed from the elements of the corresponding California offenses. When, as here, the other state's statutes do not, on their face, demonstrate that a defendant's conviction under those statutes qualifies as a strike under California law, the record of the prior conviction must be examined before a determination can be made whether the prior conviction qualifies as a strike. (*People v. Denard* (2015) 242 Cal.App.4th 1012, 1027; *People v. Saez*, *supra*, 237 Cal.App.4th at p. 1195.)

One of the documents before the sentencing court as part of the record of the Oregon convictions, and on which the court relied to decide whether those convictions constituted strikes, was petitioner's "**MOTION FOR ORDER ACCEPTING PLEA OF GUILTY**." Item number 15 of an affidavit signed by petitioner and notarized by his then defense counsel was preprinted: "I plead 'GUILTY' and request the Court to accept my plea of 'GUILTY' and have entered my plea of 'GUILTY' on the basis of the following acts I committed[.]" Handprinted immediately following this was: "In Polk County on or about 5/24/93 I unlawfully and without permission entered a dwelling . . . with the intent to commit the crime of theft. I was armed with a handgun and threaten[] to shoot the homeowner to overcome his resistance to theft; I caused physical injury to him by striking him with the pistol. I attempted to cause serious physical injury to 2 men outside th[] dwelling by firin[] a pi[] at [].["6] (Some capitalization omitted.) This

---

**6** The document was scanned or copied in such a way that words or portion of words were cut off. The sentencing judge was able to make out some of the words and read them into the record. Empty brackets signify words or portions of words that remain missing.

document was signed and notarized on September 29, 1993, the same day defendant was permitted to plead guilty and was sentenced.

In *Gallardo*, the California Supreme Court determined that pursuant to *Descamps* and *Mathis*, "a sentencing court is permitted to identify those facts that were already necessarily found by a prior jury in rendering a guilty verdict *or admitted by the defendant in entering a guilty plea* . . . ." (*Gallardo*, *supra*, 4 Cal.5th at p. 124, italics added.) In its holding, the court reiterated: "The [sentencing] court's role is . . . limited to identifying those facts that were established by virtue of the conviction itself — that is, facts the jury was necessarily required to find to render a guilty verdict, *or that the defendant admitted as the factual basis for a guilty plea*." (*Id*. at p. 136, italics added, fn. omitted.)

It is readily apparent that petitioner's statement of his own conduct contained in the "**MOTION FOR ORDER ACCEPTING PLEA OF GUILTY**" constituted the factual basis for his guilty plea. As such, it could properly be considered by the sentencing court — even under *Gallardo* — in determining the nature of the Oregon convictions. (See *Scott*, *supra*, 49 Cal.App.5th at pp. 1019-1020, rev.gr.)

### III

### THE REMAINING CLAIMS ARE BARRED.

Petitioner's remaining claims — that only one strike should have been imposed because the five Oregon convictions arose from a single course of conduct; the trial court relied on uncertified documents; and the trial court imposed an unlawful sentence on count 3 — could have been raised on direct appeal in case No. F043776. Habeas corpus will not serve as a substitute for appeal, absent special circumstances not shown to exist here. (*In re Dixon* (1953) 41 Cal.2d 756, 759.)[7]

---

[7] The claims also lack merit. Five strikes properly were found, because petitioner's statement of his conduct showed he committed five separate acts. (*People v. Vargas* (2014) 59 Cal.4th 635, 646.) The record reflects the sentencing court had before it a

12.

## **DISPOSITION**

The petition is denied.

DETJEN, Acting P.J.

WE CONCUR:


FRANSON, J.


PEÑA, J.

---

certified, 38-page document from Polk County Courts, Oregon, and that page 13 was petitioner's statement of his conduct.  The sentence for violating section 69 (count 3) is imprisonment in the state prison or in county jail.  Petitioner's offense was not declared to be a misdemeanor or punished as such (§ 17, subd. (b)), and he was not subject to sentencing pursuant to section 1170, subdivision (h) (see *id.*, subd. (h)(7), formerly subd. (h)(6); *People v. Cruz* (2012) 207 Cal.App.4th 664, 680); hence, the standard felony sentencing range for this offense was 16 months, two years, or three years (§ 18, subd. (a)), but petitioner properly received a sentence of 25 years to life on count 3 under the three strikes law.